**ST. LEO'S FEDERAL CREDIT UNION, INC., Appellant,**

v.

**L. E. WILLIS AUTO SALES, a Partnership, Appellee.**

No. 13550.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 23, 1959.

Oliver, Gillespie & Lacy, San Antonio, for appellant.

James N. Castleberry, Jr., Rudy Rice, San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by L. E. Willis Auto Sales, a partnership, hereinafter referred to as Willis, against St. Leo's Federal Credit Union, a corporation, hereinafter referred to as Credit Union, Arthur Patino, individually and as president of Credit Union, hereinafter referred to as Patino, and Joe Leal, hereinafter referred to as Leal, seeking to recover from defendants the sum of $1,350, alleged to be the purchase price of a 1955 Mercury Automobile sold by Willis to Leal, and to be financed by Credit Union. The suit was dismissed as to Patino. The trial was to a jury, but at the close of the evidence the trial court instructed a verdict in favor of Willis against Credit Union for the sum of $1,350, and in favor of Credit Union against Leal in the sum of $490, conditioned that Credit Union deliver to Leal a certificate of title to the 1955 Mercury Automobile within a reasonable time after judgment. Whereupon Credit Union filed a motion for new trial. Thereafter the trial court entered an order reforming the judgment, and then proceeded to enter a reformed judgment to which Credit Union again objected. Thereafter the trial court again amended his judgment so as to allow the recovery of Willis against Credit Union to stand, but granted the motion for a new trial as to that part of the judgment which was against Leal. Thus the judgment as finally entered made no disposition of the cause of action by Willis or by Credit Union as against Leal. Credit Union has prosecuted this appeal.

Appellant's first contention is to the effect that this lawsuit presented but a single cause of action, indivisible, laid against the defendants jointly and severally. That "there had been no severance, and none requested, and the court was not authorized to split this cause of action, and the granting of a new trial in one part of the case had the effect of granting a new trial as to the entire cause." We sustain this point.

The judgment herein being upon a peremptory instruction of the court to the jury, we must state the facts in the light most favorable to the losing party, Credit Union. It seems that this was really a four-way transaction whereby Willis sold the 1955 Mercury Automobile to one Paul Chapa, who was a licensed automobile dealer, for a cash consideration of $1,350, who

in turn sold the automobile to Leal and received a profit of one 1951 Buick and $200 in cash. Chapa got the Mercury from Willis on November 10, 1957, and showed it to Leal, who agreed to purchase it, but it needed a few repairs. The Mercury was returned to the place of business of Willis on November 14, 1957, and the repairs made. On November 15, 1957, the Mercury was again turned over to Leal and he and Chapa, on that day, went to the office of Patino to see if Leal could secure a loan from Credit Union of which Patino was president. It was learned that Leal was entitled to become a member of Credit Union and he then and there signed a membership card. The three men went downstairs' and viewed the Mercury. Patino decided that the automobile was worth the sum which Leal desired to borrow and had Leal sign a note for the principal sum of $1,350, explaining that the loan would have to be approved by the loan committee. Patino received notice on November 17th that the loan committee had approved the loan, and on November 18th went out to the office of Willis to see if the deal could be closed before he left on a vacation, but found that it could not be done, due to the fact that Willis did not have the title papers to the Mercury, but expected to receive them. Patino told the bookkeeper for Willis not to draw a draft on Credit Union, as its auditor objected to the company paying drafts. He desired to issue a check payable to both Leal and Willis and secure both of their signatures on the check before the money was paid out. Later Willis drew a draft on Credit Union and attached the title papers to the draft, but it was not honored, as Patino had warned Willis it would not be honored. When Patino returned from his vacation, Leal had wrecked the Mercury and did not want to go through with the deal.

These facts did not warrant the trial court in instructing a verdict in favor of Willis against Credit Union in the sum of $1,350, nor did they justify the trial court in splitting the cause of action and render-

ing the judgment which was rendered and leaving the remainder of the cause undetermined. Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929.

The judgment of the trial court is reversed and the cause remanded for a new trial.